**In re L.B.G. PROPERTIES, INC., Debtor.**

**Bankruptcy No. 83–01358–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

March 17, 1987.

Timothy J. Norris, Weil, Gotshal & Manges, and Harry A. Payton, Payton & Rachlin, P.A., Miami, Fla., for debtor.

John C. Pennington, Norton, Pennington, Goetz, Cronkright & Prior, and Edwin Marger, Atlanta, Ga., for Chisholm Realty Co.

## ORDER DENYING CONFIRMATION AND DISMISSING CASE

THOMAS C. BRITTON, Chief Judge.

The Order Confirming Debtor's Second Plan dated December 1, 1986, 68 B.R. 201 (C.P. No. 350) was vacated December 23 and the confirmation hearing of October 20 was continued to January 22, 1987. (C.P. No. 360). The continued confirmation hearing was rescheduled for and held on March 12, 1987. (C.P. No. 371).

The reconsideration of the Confirmation Order followed the motion of the major secured creditor, Chisholm, and an extended hearing on that motion. (C.P. No. 368).

Chisholm has stipulated that there are two issues: (1) the validity of ¶ 8.02(a) of the debtor's Second Plan (C.P. No. 282), which purports to release two non-debtor individual guarantors of the debt owed to Chisholm, and (2) whether Chisholm in fact will retain its lien under the Second Plan, as that phrase is used in the cram down provision, 11 U.S.C. § 1129(b)(2)(A)(i)(I).

### Release of Non-Debtor Guarantors

■ The Second Plan, ¶ 8.02(a) stipulates that:

"Satisfaction of Allowed Claims pursuant to this Plan shall constitute a waiver of any rights or claims the holder(s) of such claim(s) may have against persons other than the Debtor."

The effect of this stipulation together with the modification of the Second Plan (C.P. No. 336a ¶ 2), is to release two non-debtor, individual guarantors of the corporate debtor's obligation to Chisholm. Such a provision is prohibited by § 524(e). *In re Sago Palms Joint Venture*, 39 B.R. 9 (Bankr.S. D.Fla.1984). This defect could be readily remedied by the deletion of the invalid provision through the debtor's consent to an immediate amendment of its plan. Although the debtor has made no such offer, I shall presume that it would do so. I would not dismiss this case solely on account of this defect.

### Treatment of Chisholm Lien Under Second Plan

■ The Second Plan was rejected by Class 3, which includes only Chisholm, a creditor with a lien in the amount of $3.48 million secured by the debtor's real property valued at $6.25 million. It was the default of that obligation and its attempted foreclosure by Chisholm in 1983 which prompted this bankruptcy.

Because of Chisholm's rejection, the Second Plan's confirmation requires cram down under the provisions of § 1129(b)(2)(A)(i), the cram down option relied upon by the debtor:

"(I) that the holders of such claims *retain the liens securing such claims,* whether the property subject to such liens is retained by the debtor or trans-

ferred to another entity, to the extent of the allowed amount of such claims; and (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." (Emphasis added.)

The December 3 confirmation order explained this court's finding that the debtor has met the requirement in clause (II) by providing a 15–year note bearing 8.5% interest. Chisholm has not convinced me that there was any error in that finding.

However, the Second Plan supplants Chisholm's existing lien, described above, with a new lien created by a new, extended note, upon the same real property, but the new lien is subordinated to a $4.8 million new first mortgage. The effect of this subordination is to replace Chisholm's present fully collateralized lien with a lien which is unsecured to the extent of $2.03 million. This is so because the deduction of the new $4.8 million first mortgage from the $6.25 million value of the debtor's real property leaves only $1.45 million collateral free to secure Chisholm's new lien of $3.48 million.

The debtor argues that ¶ 6.05(5) of the plan dedicates $1.75 million of the $4.8 million first mortgage to collateralization of Chisholm's new lien. If this contention were accurate, Chisholm's new lien would still be unsecured to the extent of $280,000. It cannot be said that Chisholm retains its existing lien to the extent of the allowed amount of its claim.

Paragraph 6.05(5) of the plan provides that:

"The balance of approximately $1.75 million will be available as future advances to be used to make the payments under the Note described in Paragraph 5.01 [Chisholm's new note] to the extent that there is a shortfall in net operating income to make the payments, to pay Allowed Administrative Claims of Class IV to the extent that cash otherwise on hand on the Effective Date of this Plan is not

sufficient to satisfy such claims and to pay other miscellaneous obligations.

There is no assurance in the foregoing provision that the $1.75 million partially dedicated to collateralization of Chisholm's new note will not be substantially eroded by the first priority administrative claim incurred in this heavily litigated four-year-old attempted reorganization and by the "other miscellaneous obligations", which are completely unrestricted.

The debtor's own projections anticipate years of shortfalls in meeting the obligations of the new Chisholm note. The debtor's attempted justification for depriving Chisholm of its presently fully secured lien was the testimony of the debtor's principal at the confirmation hearing of October 20. He testified that in his opinion the value of the debtor's real property would increase immediately at a rate sufficient to provide full collateralization of the Chisholm note because he anticipates that the demand for the debtor's property will increase and that the recent changes in the federal tax law will stimulate debtor's sales. The sole purpose of collateralization is to protect a lender against the possibility that a borrower's projections are not realized. I cannot justify the replacement of existing collateral with a projected property valuation. The debtor has failed to preserve Chisholm's existing lien.

### Dismissal of this Case

■ Notice was given to all parties that at the confirmation hearing conversion or dismissal of this case would be considered under § 1112(b), if confirmation were denied. (C.P. No. 286). The creditor has requested dismissal of this case in order that it may continue its interrupted foreclosure. The debtor has not requested additional time to file another plan or a modification of this Second Plan, but if such a request were filed, it would be denied.

This debtor has had four years within which to develop and present a confirmable plan. It never would have been permitted anywhere near that much time, but for the extraordinary delay resulting from an appeal which led to the reversal of this

court's confirmation of the debtor's original plan.

From the beginning, the debtor has pinned its hopes on an improvement in the market conditions which led to its default and bankruptcy. The passage of four years has not enabled this debtor to turn its operation around. It has consistently generated insufficient revenue to pay taxes and meet its carrying charges. It is unrealistic to assume that it can now do so.

Chapter 11 offers a beleagered debtor an opportunity to attempt reorganization of its debts. It does not guarantee success nor does it provide an unlimited opportunity to seek a successful solution. This debtor has had more than a reasonable opportunity. It has failed. This case is dismissed. Dismissal is with prejudice to the filing of any bankruptcy petition by this debtor earlier than one year after this order becomes final.