

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2000

# In Re: Continental Airlines, Inc.

Precedential or Non-Precedential:

Docket 98-5509

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re: Continental Airlines, Inc." (2000). *2000 Decisions*. Paper 16.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/16

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 1, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5509

IN RE: CONTINENTAL AIRLINES and
CONTINENTAL AIRLINES HOLDINGS, INC.,
        Debtors

M. BARNETT GILLMAN; ALAN FREBERG; FRANK
DEBORA; STUART E. WECHSLER; ANDREW D.
FRIEDMAN; WECHSLER SKIRNICK HARWOOD HALEBIAN
& FEFFER; ZACHARY ALAN STARR; GOODKIND
LABATON & RUDOFF

v.

CONTINENTAL AIRLINES;
CONTINENTAL AIR HOLDINGS, INC.

THOMAS E. ROSS, Trustee

M. Barnett Gillman, Alan Freberg, Frank Debora
*Frank Sachs and *Lloyd Pressel Co., Inc.
        Appellants

*(Pursuant to F.R.A.P. 12a)

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 93-cv-00319)
(District Judge: The Honorable Joseph J. Farnan, Jr.)

Argued: September 13, 1999

Before: GREENBERG, SCIRICA, and RENDELL,
Circuit Judges

(Filed: February 1, 2000)


        Andrew D. Friedman, Esq.
         [ARGUED]
        Wechsler, Harwood, Halebian
         & Feffer
        488 Madison Avenue
        New York, NY 10022
        Counsel for Appellants

        Robert S. Brady, Esq. [ARGUED]

        Laura D. Jones, Esq.
        Young, Conaway, Stargatt & Taylor
        P. O. Box 391
        Rodney Square North, 11th Floor
        Wilmington, DE 19899-0391
        Counsel for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge:

In this bankruptcy-related appeal, we consider the validity of a provision in Continental Airlines' plan of reorganization that released and permanently enjoined shareholder lawsuits against certain of Continental Airlines' present and former directors and officers who were not themselves in bankruptcy. The Bankruptcy Court made no specific findings regarding its jurisdiction, substantive legal authority, or factual basis to justify this provision. The District Court nonetheless upheld the provision. We will reject Continental Airlines' contention that claim preclusion and the doctrine of equitable mootness prevent us from considering the merits of this appeal. We will reverse the District Court's order approving the validity of this provision, which is legally and factually insupportable.

I.

Appellants are plaintiffs in several securities fraud class action lawsuits brought against directors and officers of Continental Airlines Holdings, Inc. Plaintiffs' class actions allege that the D&O defendants caused Continental Airlines Holdings to issue false and misleading statements of

2

material facts in violation of, inter alia, section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5, and common law. On December 3, 1990, Continental Holdings and affiliated entities ("Continental Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in the District of Delaware.1

The nature of this appeal requires that we provide a detailed summary of the chain of events in the bankruptcy case. The Continental Debtors brought an adversary proceeding on January 17, 1991 to prevent Plaintiffs' class actions against the non-debtor D&O defendants from interfering with the Continental Debtors' reorganization process. The Bankruptcy Court temporarily enjoined Plaintiffs' pursuit of their class actions on February 2, 1991. That order was affirmed on appeal on June 28, 1993. See In re Continental Airlines, 177 B.R. 475 (D. Del. 1993).

The District Court decision noted that the injunction could have been more narrowly crafted to permit some portion of Plaintiffs' class actions to continue, but Plaintiffs did not avail themselves of the opportunity to participate in the drafting of the Bankruptcy Court order. Id. at 482. Plaintiffs' class actions remained pending, but inactive, during the reorganization proceedings.

On December 1, 1992, the Bankruptcy Court approved a settlement between the Continental Debtors, their D&Os, and D&O liability insurers. See Supp. App. B33, B43. Under this Tripartite Settlement, "The Debtors, Insureds and the Insurers will provide releases to each other." Supp. App. 36. The Continental Debtors released "any and all claims, demands, and causes of action of any kind . . . against the present or former officers or directors of the

_____

1. The Continental Debtors are not named defendants in Plaintiffs' class actions. Some Plaintiffs nonetheless filed a class "proof of claim" on the basis of their class action complaints in the Continental Airlines Holdings bankruptcy case. The proof of claim states that the amount of the claim is "unspecified, but in excess of several million dollars." Joint

App. A528 – A530. A memorandum supplementing the proof of claim form states that "[t]he debtors were, at the time of the filing of the petition initiating this case, and are still liable to the claimants and the

class, in a sum not presently determinable, but believed to exceed $5,000,000." Id.

3

Continental Debtors . . . which arose prior to the date of this settlement and release." Supp. App. B47. The D&O liability insurers were released from "any and all demands, claims, and causes of action . . . that they or any of them had, now have, or may have against the Insurers" in exchange for providing $5 million to the Continental Debtors to settle the Continental Debtors' claims and potential claims against their D&Os. Supp. App. B57 – B58. In turn, the D&Os released their claims against the Continental Debtors. Supp. App. 63–64. The Tripartite Settlement was binding "upon the signatories hereto and all other insured persons and entities under the Policies, and their respective successors, assigns, heirs, and estates." Supp. App. B60. This Tripartite Settlement makes no reference to Plaintiffs' class actions, and Plaintiffs did not object to the settlement or appeal the order approving the settlement.

The Continental Debtors later filed a plan of

reorganization, amended several times, which contained a provision releasing and permanently enjoining a broader range of claims, including Plaintiffs' class actions against the non-debtor D&O defendants:

> 12.4 Release of Certain Claims and Actions
>
> (a) On the Effective Date, in order to further the rehabilitation of the Debtors, any and all claims and causes of action, now existing or hereafter arising, against any present or former officer or director of any of the Debtors or any of the Debtors' professional advisors arising out of or related to such Person's actions or omissions to act in his or her capacity as an officer or director of the Debtors or as a member of any committee, or as a fiduciary of any pension or employee benefit plan, or as such an advisor, relating to the Debtors at any time through the Confirmation Date, are irrevocably waived, released and relinquished, and each of the Debtors, its Creditors, and Equity Holders and all other persons is enjoined from asserting any such claim or cause of action in any court or forum. . . .
>
> (b)(ii) Various claims, including the Stockhol der Actions, also have been asserted or threatened against certain

4

> present or former directors of the Debtors including claims arising out of intercompany transactions that occurred and decisions that were made prior to December 3, 1990 . . . The Debtors have maintained a directors and officers liability insurance policy and the insurer under such policy, following approval by the Bankruptcy Court on December 1, 1992, paid $5 million in final settlement in final settlement of all claims (excepting only the L/S Claims). The Confirmation Order shall . . . . provide that all Persons shall thenceforth be permanently enjoined, stayed and restrained from pursuing or prosecuting any such actions against any person so released.

Joint App. A247 – A248 (emphasis added). According to the Continental Debtors, subsection (b)(ii) applies to Plaintiffs because their actions fall within the definition of "stockholder actions" under S 1.168 of the plan. See Brief for Appellees at 11, n4.

Plaintiffs filed detailed objections to section 12.4 on at least five occasions. Plaintiffs in the consolidated class actions filed objections on December 30, 1992 and February 17, 1993. Joint App. A354, A505. Plaintiffs in the

Gillman class action filed objections on December 30, 1992 and February 17, 1993. Joint App. A373, A523. Plaintiffs also filed a letter brief reply on April 12, 1993. Joint App. A467. In these objections, Plaintiffs complained that the plan impermissibly "purports to release all claims held by the Class against certain third party non-debtors who are not before this court. . . . The releases will not be voluntary. . . . The plan seeks to effectively discharge obligations of non-debtors over the objections of creditors." Joint App. A511-A512. In response to Plaintiffs' objections, the Continental Debtors stated that Plaintiffs' objection:

> [R]elates only to Section 12(b)(ii) of the Plan . . . Section 12(b)(ii) is entirely historical in nature and refers only to certain already-settled derivative litigation which was property of the Debtors' estates. All of the litigation referred to in Section 12.4(b)(ii) and in Objection No. 6 was settled under a settlement agreement approved by this Court pursuant to Bankruptcy Rule 9019 on December 1, 1992. These objectors did not object to

5

> this Court's order approving that settlement, nor did they appeal therefrom. The order has long since become final and the settlement payment of $5 million has been made. These objectors have slept on their right to object to the Settlement; their complaint about the proposed Order is moot.

Joint App. A484.

The Bankruptcy Court overruled Plaintiffs' objections to the Continental Debtors' disclosure statement because no one was present to prosecute them. See Supp. App. B364 – B365.2 Plaintiffs' objections to the Continental Debtors' plan of reorganization itself were not addressed at the plan confirmation hearing. Plaintiffs' counsel did not respond when the Bankruptcy Court announced Plaintiffs' opportunity to present their objections, matters no. 24 and 25, at the plan confirmation hearing on April 7, 1993. See Third Supp. App. B1625 (Bankruptcy Court calling Freberg and Gillman objections, with no response, and continuing onward). In Plaintiffs' April 9, 1993 letter-brief reply, Plaintiffs notified the Bankruptcy Court and the Continental Debtors that "Class Plaintiffs submit this letter-brief reply to the Debtors' brief in support of the Plan because they may not be able to personally attend the confirmation hearing on the date and time that the Class Plaintiffs' objections are called for oral argument." Joint App. A467, fn1. The Bankruptcy Court approved Continental Debtors' plan of reorganization on April 16, 1993. Plaintiffs filed an appeal on June 28, 1993 seeking a

reversal of the order confirming the Continental Debtors' plan. Plaintiffs did not seek a stay of the confirmation order pending appeal.

More than five years later, on September 30, 1998, the District Court issued a memorandum opinion and order affirming the Bankruptcy Court's confirmation order. In upholding the validity of the release and permanent injunction of Plaintiffs' claims against the non-debtor D&O defendants, the District Court first assessed the relevance

_____

2. A disclosure statement must be filed, approved, and circulated in connection with a plan of reorganization to provide adequate information regarding the effects of a plan of reorganization. See 11 U.S.C. S 1125.

6

of 11 U.S.C. S 524(e), which states generally that a discharge of a debtor's obligations in bankruptcy does not relieve non-debtor parties of liability for debts. The District Court declined to adopt a per se rule that section 524(e) prohibits non-debtor releases and permanent injunctions due to the District Court's belief that such a rule would be inconsistent with bankruptcy courts' broad equitable powers. The District Court next noted that several courts have relied on 11 U.S.C. S 105(a) in upholding the validity of non-consensual releases and permanent injunctions that are essential to the confirmation of a plan of reorganization. Section 105(a) authorizes courts to take actions"necessary or appropriate" to carry out the provisions of Title 11 of the United States Code.

Although the District Court acknowledged that involuntary releases of non-debtor parties are regarded with disfavor in general, the District Court also stated that a confirmed and implemented plan of reorganization should be disturbed for only "compelling reasons" and found no compelling reason to modify the Continental Debtors' plan based on the Plaintiffs' objections. The District Court reasoned that the Plaintiffs did not object to or appeal the Tripartite Settlement, which the Court perceived as the operative document governing Plaintiffs' rights. At the same time, the District Court considered the release and permanent injunction of Plaintiffs' lawsuits to be a"key element" of the Continental Debtors' reorganization because the Continental Debtors were obliged to indemnify the D&Os, and thus Plaintiffs' lawsuits ultimately would diminish the funds available for the Continental Debtors' creditors and would burden the reorganized Continental Debtors with litigation. The District Court did not refer to any factual evidence in the record to support its conclusion that the release and permanent injunction were key to the

Continental Debtors' reorganization or that the Continental Debtors would be unduly burdened. Rather, the District Court presumed that the reorganized Continental Debtors and their management would be distracted post-confirmation by discovery and litigation. The District Court also based its affirmance on its view that Plaintiffs' lawsuits would implicate the Continental Debtors' D&O liability insurance policy, and thus affected property of the

Continental Debtors' bankruptcy estate. On October 30, 1998, Plaintiffs filed the instant appeal from the District Court's order.

II.

Our jurisdiction to review this appeal is based on 28 U.S.C. SS 158(d) and 1291. We exercise plenary review over the District Court's decision to affirm the Bankruptcy Court's order. See Interface Group-Nevada, Inc. v. Trans World Airlines (In re Trans World Airlines, Inc.), 145 F.3d 124, 130 (3d Cir. 1998). We use the same standards to review the Bankruptcy Court's confirmation order as did the District Court; we therefore "review the Bankruptcy Court's legal determinations de novo, its factualfindings for clear error, and its exercises of discretion for abuse thereof." Manus Corp. v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.), 188 F.3d 116, 122 (3d Cir. 1999) (citing Interface Group-Nevada, 145 F.3d at 131).

The Continental Debtors contend that we should not address the merits of Plaintiffs' claim because of claim preclusion and equitable mootness. We first will address, and reject, these arguments.

Claim Preclusion

The Continental Debtors argue that Plaintiffs' objections to the plan are precluded by virtue of Plaintiffs' failure to object to the Tripartite Settlement. Claim preclusion requires a final judgment on the merits in a prior suit involving the same parties, or their privities, and a subsequent suit based on the same cause of action. See CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999) (citing Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504 (3d Cir. 1992)); Sanders Confectionary Products, Inc., v. Heller Financial, Inc., 973 F.2d 474, 480 (6th Cir. 1992). Claim preclusion commonly occurs when a party fails to raise issues in the plan confirmation process that could have been addressed in that forum, or fails to appeal the confirmation order; in such instances, a collateral attack on

the validity of a provision of that plan, such as a non-debtor release or injunction, often has been unsuccessful.3

In the instant appeal, the Continental Debtors do not contend that we should bar Plaintiffs' appeal for failure to prosecute their objections at the Continental Debtors' plan confirmation hearing. Rather, their claim preclusion argument is premised on the fact that Plaintiffs did not object to or appeal the Bankruptcy Court's order approving the Tripartite Settlement. This argument amounts to little more than sleight of hand. Hardly a clear barrier as urged by the Continental Debtors, the Tripartite Settlement resolves only claims between the Continental Debtors, their D&Os, and the D&O liability insurers, see, e.g., Supp. App. B36, B47, B60, and does not appear to affect Plaintiffs' claims at all. Although the Tripartite Settlement might have affected Plaintiffs' rights had their lawsuits been derivative,4 the Continental Debtors do not argue on appeal that Plaintiffs' claims are derivative and we find nothing in the Tripartite Settlement to suggest that it implicated Plaintiffs' direct claims against the non-debtor D&O defendants. Thus, Plaintiffs' failure to object to or appeal from the Tripartite Settlement does not bar their appeal from the Bankruptcy Court's order confirming the Continental Debtors' plan of reorganization.

_____

3. See, e.g., In re Szoskek, 886 F.2d 1405, 1414 (3d Cir. 1989) (declining to reverse confirmation of chapter 13 plan when appellant failed to object to confirmation order). See also Monarch Life Ins. Co. v. Ropes and Gray, 65 F.3d 973, 983 (1st Cir. 1995) ("the issue of the bankruptcy court's power to enter its so-called `incidental' injunction was precluded, having been conclusively resolved in the confirmation order which Monarch Life neither opposed nor appealed. . . . The proper recourse for addressing these questions was by direct appeal from the order of confirmation"); Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1052-1054 (5th Cir. 1987) (holding that Republic's cause of action for enforcement of the guaranty was barred by confirmation order that Republic did not appeal) (citing Stoll v. Gottlieb, 305 U.S. 165, 177 (1938) (holding that party may not collaterally attack the jurisdiction of a court when that question already has been decided)).

4. One of Plaintiffs' class actions, the Gillman action, originally was filed as a derivative action, but that action was dismissed on jurisdictional grounds and was re-filed in a different venue as a class action.

Equitable Mootness

We similarly reject the Continental Debtors' argument
that we should dismiss Plaintiffs' appeal here for"equitable
mootness" as we did in a previous appeal that arose out of
the Continental Debtors' bankruptcy. See In re Continental
Airlines, 91 F.3d 553 (3d Cir. 1996) ("Continental 1996").
Under the doctrine of equitable mootness, an appeal should
be dismissed, even if the court has jurisdiction and could
fashion relief, if the implementation of that relief would be
inequitable. Id. at 559 [citations omitted]. Following the
lead of other circuits, we noted in Continental 1996 that "[i]f
limited in scope and cautiously applied, this doctrine
provides a vehicle whereby the court can prevent
substantial harm to numerous parties." Id.

The appeals dismissed in Continental 1996 had an
"integral nexus" with the feasibility of the Continental
Debtors' plan of reorganization. See id. at 564. In that case,
Collateral and Certificate Trustees were appealing orders of
the Bankruptcy Court that denied the Trustees' motion for
adequate protection, confirmed the Continental Debtors'
plan of reorganization, and denied a motion for the
establishment of a cash deposit of $123,479,287. Id. at
555. We identified the prudential factors other courts have
considered to evaluate equitable mootness, including
whether the plan has been substantially consummated or
stayed, whether the requested relief would affect the rights
of other parties, whether the requested relief would affect
the success of the plan, and the public policy of affording
finality to bankruptcy judgments. Id. at 560.

The Continental Debtors established a record in
Continental 1996 that "an essential factor in that decision
[of investors to rely on the confirmation order] was the
bankruptcy court's disallowance of the Trustees' adequate
protection claim." Id. at 562-563; see also id. at 564 (citing
record establishing that investors would not close
transaction if Trustees received requested relief). At the
same time, we found:

> The Trustees have not presented us with any
> arguments which would weigh against all of the
> prudential considerations that dictate that this

10

> consummated reorganization must be left in place. . .
> To convince a court to take the action sought by the
> Trustees which would undermine the basis for the
> Investors' decision to proceed, the Trustees would have
> to proffer a powerful reason indeed. They have not even
> attempted to do so.

Id. at 566. Thus, we concluded in Continental 1996 that "we can see no prudential considerations that would support an attempt by an appellate court, district or court of appeals, to fashion even a limited remedy for the Trustees." Id. at 567. Accordingly, we found that the District Court did not abuse its discretion when the Court dismissed the Continental 1996 appeals. Id.

We face a very different situation in the instant appeal. We note that the Continental Debtors' brief to the District Court did not raise equitable mootness. The Continental Debtors later submitted a letter to the District Court enclosing another court decision that itself happens to mention equitable mootness among many other issues, see Third Supp. App. B2353 et seq., but the Continental Debtors' cover letter to the District Court does not bring this issue specifically to the District Court's attention. Thus, the Continental Debtors did not properly preserve the equitable mootness argument for appeal. Even if they had properly preserved the issue, however, the Continental Debtors established no record before the District Court, or before us, regarding the application of the equitable mootness doctrine to the particular facts and circumstances of Plaintiffs' appeal. Unlike their posturing of this issue in Continental 1996, they provide no evidence that investors and creditors, in deciding whether to support the Continental Debtors' plan, ever considered Plaintiffs' claims against the non-debtor D&Os in class actions worth a few million dollars, arguably a nominal amount given an airline reorganization of this magnitude.[5]  No evidence or

_____

5. See, e.g., Third Supp. App. B1830 (disclosure statement listing assets and liabilities of Continental Debtors in amount exceeding $4.6 billion); Third Supp. App. B1701, 1702 (Continental Debtors' counsel describing $6.5 billion of enterprise value); Third Supp. App. B1703 (noting that plan would be feasible even with another $100 million of debt); Joint App. A381 (memorandum in support of plan confirmation stating that Debtors will emerge from bankruptcy with approximately $610 million of shareholder equity and approximately $550 million of cash).

arguments have been presented that Plaintiffs' appeal, if successful, would necessitate the reversal or unraveling of the entire plan of reorganization. Accord In re Chateaugay Corp., 167 B.R. 776, 780 (S.D.N.Y. 1994) (distinguishing the Second Circuit's equitable mootness decision arising from the Chateaugay bankruptcy and stating that "[i]t is difficult to conceive how a potential liability of, at most, several million dollars could unravel the Debtors' reorganization, which involved the transfer of billions of

dollars, and which has resulted in the revival of Debtors into a multibillion dollar operation with $200 million in working capital . . . appellees have made no showing that it would `knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court.' ") (citing Chateaugay Corp. v. LTV Steel Co., 10 F.3d 944, 952 (2d Cir. 1993)). Apparently, the Continental Debtors have chosen to rest on the record established in Continental 1996. Yet, much of that record is entirely inapposite to the facts and circumstances of Plaintiffs' appeal.

In balancing the policy favoring finality of bankruptcy court judgments -- particularly reorganization plans -- against other considerations, we note as well that the equities here would not dictate dismissal. Plaintiffs, who have never had their day in court, have been forced to forfeit their claims against non-debtors with no consideration in return. Even if successful, Plaintiffs' appeal should not threaten the entire reorganization. Moreover, Plaintiffs are not responsible for the extensive delay in this appeal; the District Court issued its opinion upholding the Bankruptcy Court's confirmation order more than five years after Plaintiffs' appealed that confirmation order.

We conclude that the key ingredients necessary for dismissal that led to our dismissal of Continental 1996 -- specific presentation of this issue to the Court below, an evidentiary record, and equitable considerations-- are lacking here. Consequently, we will examine the merits of this appeal.

12

Validity of non-debtor release and permanent injunction

At issue in this appeal is a provision releasing and permanently enjoining Plaintiffs' actions against the Continental Debtors' D&Os who have not formally availed themselves of the benefits and burdens of the bankruptcy process. Plaintiffs argue that section 12.4(b)(ii) of the Continental Debtors' plan impermissibly releases and permanently enjoins their class actions against non-debtors without notice to individual class members and without consent or consideration, violating 11 U.S.C. S 524(e) by relieving non-debtor parties of liabilities. Although Plaintiffs acknowledge that 11 U.S.C. S 105(a) has been used by some courts to enjoin actions against non-debtors when necessary or appropriate to enforce or implement court orders, Plaintiffs question the legal and factual basis for the District Court's finding of need and propriety in this

particular instance.

Section 524(e) of the Bankruptcy Code makes clear that the bankruptcy discharge of a debtor, by itself, does not operate to relieve non-debtors of their liabilities. See Copelin v. Spirco, Inc., 182 F.3d 174, 182 (3d Cir. 1999) (citing First Fidelity Bank v. McAteer, 985 F.2d 114, 118 (3d Cir. 1993)). The Bankruptcy Code does not explicitly authorize the release and permanent injunction of claims against non-debtors, except in one instance not applicable here. [6] Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code. However, section 105(a) has a limited scope. It does not "create substantive rights that would otherwise be unavailable under the Bankruptcy Code." United States v. Pepperman, 976 F.2d 123, 131 (3d Cir. 1992). Accord Internal Revenue Service v. Kaplan , 104 F.3d 589, 597 (3d Cir. 1997). See generally Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) (court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code").

_____

6. See 11 U.S.C. S 524(g) (establishing procedure for resolving asbestos claims).

We have not ruled previously on the validity of provisions in chapter 11 plans of reorganization releasing and permanently enjoining third party actions against non-debtors.[7] We will review briefly the relevant decisions from other circuits, leading us to the inescapable conclusion that, in this appeal, the release and permanent injunction of Plaintiffs' lawsuits are legally and factually insupportable.

The Courts of Appeals for the Ninth and Tenth Circuits have held that non-debtor releases and permanent injunctions are impermissible. "The bankruptcy court has no power to discharge the liabilities of a nondebtor pursuant to the consent of creditors as part of a reorganization plan." Underhill v. Royal, 769 F.2d 1426, 1432 (9th Cir. 1985). "Section 524(e) precludes discharging the liabilities of nondebtors." Resorts Internat'l v. Lowenschuss (In re Lowenschuss), 67 F.3d 1394, 1402 (9th Cir. 1995) (affirming district court's decision vacating global release provision). These courts find a release and permanent injunction to be indistinguishable from a bankruptcy discharge. See American Hardwoods, Inc. v. Deutche Credit Corp., 885 F.2d 621, 626 (9th Cir. 1989). See also Landsing Diversified Properties - II v. First Nat'l

Bank & Trust Co. of Tulsa (In re Western Real Estate Fund,
Inc.), 922 F.2d 592, 601 (10th Cir. 1990) (vacating
injunction, following American Hardwoods with respect to
permanent injunctions of claims against non-debtor),
modified by Abel v. West, 932 F.2d 898 (10th Cir. 1991).8

_____

7. Our decision in McAteer occasionally is cited for the proposition that
the Bankruptcy Code does not permit the release of obligations of non-
debtor parties, but McAteer, a chapter 13 case with a unique set of facts,
does not address the validity of a specific provision in a chapter 11 plan
of reorganization that permanently enjoins actions against non-debtor
parties. See McAteer, 985 F.2d at 118.

8. Quite a few courts have followed the lead of the Ninth and Tenth
Circuits. See, e.g., In re Davis Broadcasting, Inc., 176 B.R. 290, 292
(M.D. Ga. 1994) (finding that non-debtor injunction violated section
524(e) and thus exceeded power and authority of bankruptcy court, even
though Plaintiffs did not take any action to have non-debtor injunction
removed from plan); Bill Roderick Distrib., Inc. v. A.J. Mackay Co. (In re
A.J. Mackay Co.), 50 B.R. 756, 764 (D. Utah 1985) (deleting provisions

14

Other circuits have adopted a more flexible approach,
albeit in the context of extraordinary cases. In Drexel and
Manville, the Court of Appeals for the Second Circuit
upheld plans of reorganization containing releases and
permanent injunctions of widespread claims against co-
liable parties, but those plans also provided consideration
to parties who would be enjoined from suing non-debtors.
See Securities and Exchange Commission v. Drexel Burnham
Lambert Group, Inc. (In re Drexel Burnham Lambert Group,
Inc.), 960 F.2d 285, 293 (2d Cir. 1992); Kane v. Johns-
Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636,
640, 649 (2d Cir. 1988). In Robins, the Court of Appeals for
the Fourth Circuit likewise upheld non-debtor releases that
were necessary to reorganization and were accompanied by
consideration for mass tort claimants, provided in part by
the non-debtors. See Menard-Sanford v. Mabey (In re A.H.
Robins Co.), 880 F.2d 694, 702 (4th Cir. 1989). A central
focus of these three reorganizations was the global
settlement of massive liabilities against the debtors and co-
liable parties. Substantial financial contributions from non-

_____

of confirmed plan that shield non-debtor party from liability); In re
Future
Energy Corp., 83 B.R. 470, 486 (Bankr. S.D. Ohio 1988) ("clear weight of
decisional authority supports the proposition that Chapter 11 plans
which call for the release of nonparties (such as guarantors) from
liability upon obligations of the debtor are violative of S 524(e)"); In
re

L.B.G. Properties, Inc., 72 B.R. 65, 66 (Bankr. S.D. Fla. 1987) (holding that section 524(e) prohibits plan provision releasing two non-debtor guarantors); In re Scranes, Inc., 67 B.R. 985, 989 (Bankr. N.D. Ohio 1986) (holding that provision in confirmed plan of reorganization does not release the liabilities of a non-debtor guarantor); In re Bennett Paper

Corp., 68 B.R. 518, 520 (Bankr. E.D. Mo. 1986) (disapproving disclosure statement for failure to inform creditors that non-debtor release provision is impermissible); In re Eller Bros., Inc., 53 B.R. 10, 12 (Bankr. M.D. Tenn. 1985) (denying confirmation because forcing FDIC to release non-debtor guarantors violates section 524(e)). Accord In re Keller, 157 B.R. 680, 686 (Bankr. E.D. Wash. 1993) (refusing to confirm plan compelling creditor to release liens against property of non-debtor, which violates section 1129(a)(1) just like provisions that release claims against non-debtors). See also In re Digital Impact, Inc., 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998) (holding that court has neither jurisdiction nor affirmative substantive authority under Bankruptcy Code to release obligations of non-debtors).

15

debtor co-liable parties provided compensation to claimants in exchange for the release of their liabilities and made these reorganizations feasible.9

In AOV, the Court of Appeals for the D.C. Circuit found that a plan provision releasing the liabilities of non-debtors was unfair because the plan did not provide additional compensation to a creditor whose claim against non-debtor was being released, see In re AOV Indus., Inc., 792 F.2d 1140, 1154 (D.C. Cir. 1986), thus indicating that it is necessary to provide adequate consideration to a claimholder being forced to release claims against non-debtors.

The Court of Appeals for the Fifth and Eleventh Circuits have addressed the issue of non-debtor releases in the context of settlement agreements. In Zale, the Fifth Circuit reversed the approval of a settlement among a debtor, the debtor's D&Os, and the creditors' committee that permanently enjoined a variety of existing and potential claims against the settling defendants on the ground that

_____

9. Courts generally have not construed the more permissive view of the Second and Fourth Circuits to give them "unfettered discretion to discharge non-debtors from liability." Chateaugay, 167 B.R. at 780 (noting that bankruptcy courts have permanently enjoined future lawsuits against non-debtors only when essential to plan confirmation).

Some courts presiding over cases with less "unusual" facts have been reluctant to expand the holdings of these cases. E.g., In re Market Square Inn, Inc., 163 B.R. 64, 66-67 (Bankr. W.D. Pa. 1994) (in finding non-debtor release impermissible, distinguishing cases with in which feasibility of reorganization hinges on resolution of massive claims). As a

result, according to one Bankruptcy Court, "few cases have actually allowed or upheld non-consensual permanent injunctions without pointing to some other Bankruptcy Code provision or authorization under state law. . . . Many cases which are cited for the proposition that the bankruptcy court may issue permanent injunctions were, in fact, decided on other grounds." In re Sybaris Clubs Internat'l, Inc., 189 B.R. 152, 158 (Bankr. N.D. Ill. 1995). See generally In re Master Mortgage Investment Fund, Inc., 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994) (explaining that a permanent injunction limiting the liability of non-debtor parties is "a rare thing" that should not be considered absent "a showing of exceptional circumstances" in which several key factors are present). Accord Greenblatt v. Richard Potasky Jeweler, Inc. (In re Richard

Potasky Jeweler, Inc.), 222 B.R. 816, 826-828 (S.D. Ohio 1998).

the injunction impermissibly discharged non-debtor liabilities. See Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 760 (5th Cir. 1995). In reaching this decision, the Court distinguished Drexel and Manville by explaining that "in those cases, however, the courts upheld permanent injunctions of third party claims because while the injunction permanently enjoined the lawsuits, it also channeled those claims to allow recovery from separate assets and thereby avoided discharging the nondebtor. . . . The injunction at issue in this case provided no alternative means for Feld and NUFIC to recover from CIGNA for their offensive contract rights." Id. at 760-761. In Munford, the Eleventh Circuit affirmed a district court's ruling that 11 U.S.C. S 105 and Fed. R. Civ. P. 16 authorized a bankruptcy court to permanently enjoin nonsettling defendants from asserting contribution and indemnification claims against a defendant consulting firm when the permanent injunction was integral to the debtor's settlement with the consulting firm and the bar order was fair and equitable. See Matter of Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996).10

Plaintiffs do not ask us to establish a blanket rule prohibiting all non-consensual releases and permanent injunctions of non-debtor obligations. Given the manner in which the issue has been presented to us, we need not establish our own rule regarding the conditions under

_____

10. Interestingly, several courts of appeals have refused to overturn non-debtor releases and permanent injunctions based on grounds other than the merits. In two of these cases, parties collaterally attacked the confirmation orders instead of appealing them directly. See Monarch Life Ins. Co., 65 F.3d at 983; Shoaf, 815 F.2d at 1052-1053 (citing Stoll v. Gottlieb, 305 U.S. at 177). In the oft-cited Specialty Equipment decision, the Seventh Circuit stated that consensual releases, at the very least, do not run afoul of 11 U.S.C. S 524(e), but the appeal was dismissed as moot and not on the merits. See In re Specialty Equipment Co., 3 F.3d 1043, 1049 (7th Cir. 1993). This dicta in Specialty Equipment nonetheless has called into question the vitality of an earlier Seventh Circuit decision interpreting the precursor to section 524(e), section 16 of the Bankruptcy Reform Act of 1898, and concluding that the statute specifically prohibited the discharge of non-debtor guarantors, regardless of a provision in a plan of reorganization. See Union Carbide Corp. v. Newboles, 686 F.2d 593, 595 (7th Cir. 1982) (per curiam).

17

which non-debtor releases and permanent injunctions are appropriate or permissible. Establishing a rule would provide guidance prospectively, but would be ill-advised when we can rule on Plaintiffs' appeal without doing so.11 Considering the instant appeal in the context of the case law we have reviewed, we conclude that the provision in the Continental Debtors' plan releasing and permanently enjoining Plaintiffs' lawsuits against the non-debtor D&O defendants does not pass muster under even the most flexible tests for the validity of non-debtor releases. The hallmarks of permissible non-consensual releases-- fairness, necessity to the reorganization, and specific factual findings to support these conclusions-- are all absent here.

Bankruptcy Court

The Bankruptcy Court never specifically addressed the release and permanent injunction of Plaintiffs' claims. Thus, the order confirming the Continental Debtors' plan of reorganization and releasing and permanently enjoining Plaintiffs' claims was not accompanied by any findings that

_____

11. Several of the Bankruptcy Courts in our Circuit have stated that non-debtor releases are permissible only if consensual, at least with respect to direct (as opposed to derivative) claims. See, e.g., In re Zenith Electronics Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (holding that releases of non-derivative third-party claims against non-debtor "cannot be accomplished without the affirmative agreement of the creditor affected"); In re Arrowmill Dev. Corp., 211 B.R. 497, 506-507 (Bankr. D.N.J. 1997) ("Where the creditor consents to the release, and

presumably receives consideration in exchange for that agreement, it has not been forced by virtue of the discharge provisions of the code. . . [A]s

the settlements arise by agreement and not by operation of law, they do not run afoul of section 524(e)"); In re West Coast Video Enterprises, Inc.,
174 B.R. 906, 911 (Bankr. E.D. Pa. 1994) (refusing to enforce releases with respect to movants who did not vote on plan because "each creditor bound by the terms of the [non-debtor] release must individually affirm same, either with a vote in favor of a plan including such a provision, or otherwise"). None of these cases, of course, involved the mass litigation found in Robins, Manville, or Drexel. Because the release and permanent injunction of Plaintiffs' claims are so clearly invalid under any standard,

we need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration.

18

the release was fair to the Plaintiffs and necessary to the Continental Debtors' reorganization.12  Without such findings, a release and permanent injunction cannot stand on their merits under any of the standards set forth in the case law of other circuits.

District Court

In attempting to salvage the release and permanent injunction of Plaintiffs' claims, the District Court did not discuss the lack of findings of the Bankruptcy Court, but instead made its own findings. As previously mentioned, the District Court cited section 105(a) as a basis for upholding the validity of non-consensual releases and permanent injunctions that are essential to plan confirmation. The District Court required, but could not find, "compelling reasons" to disturb the Continental Debtors' plan based on the Plaintiffs' objections, particularly because the Plaintiffs did not object to or appeal the Tripartite Settlement. The District Court also considered the release and permanent injunction of Plaintiffs' claims to be a "key element" of the Continental Debtors' reorganization because the Continental Debtors were obliged to indemnify the D&Os and thus would ultimately bear the burden of Plaintiffs' lawsuits. The District Court concluded that the Plaintiffs' actions against the non-debtor D&O defendants implicated the Continental Debtors' D&O liability insurance policy, and thus affected property of the Continental Debtors' bankruptcy estate.

_____

12. We also note, with some concern, that the Bankruptcy Court apparently never examined its jurisdiction to release and permanently enjoin Plaintiffs' claims against non-debtors. Although bankruptcy subject matter jurisdiction can extend to matters between non-debtor third parties affecting the debtor or the bankruptcy case, see 28 U.S.C. S 1334; Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 5 (1995), a court cannot simply presume it has jurisdiction in a bankruptcy case to permanently enjoin third-party class actions against non-debtors. We must remain mindful that bankruptcy jurisdiction is limited, as is the explicit grant of authority to bankruptcy courts. See 28 U.S.C. SS 157, 1334; Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). We do not treat this very significant issue more fully, however,

because the record does not permit us to resolve this issue and the parties have not raised and discussed it in their appellate briefs.

19

In making these findings, the District Court assumed facts not of record and drew superficial analogies based on inapposite case law. Contrary to the conclusion of the District Court and the arguments of the Continental Debtors, Manville, Robins, and Drexel do not support the validity of the release and permanent injunction of Plaintiffs' claims based on the record before us. First, unlike the courts in these cases, the District Court did not discuss whether the release and permanent injunction were fair to Plaintiffs and were given in exchange for reasonable consideration. Indeed, the Continental Debtors have not disputed Plaintiffs' contention that Plaintiffs received no consideration in exchange for having their lawsuits permanently enjoined.13 On this basis alone, Manville, Drexel, and Robins are inapplicable.

With respect to the District Court's view of the necessity of the release and permanent injunction, we find nothing in the record to even imply that the success of the Continental Debtors' reorganization bore any relationship to the release and permanent injunction of Plaintiffs' class actions. Unlike in cases such as Manville, Drexel, and Robins, we have found no evidence that the non-debtor D&Os provided a critical financial contribution to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability for Plaintiffs' claims. Nor did Plaintiffs' lawsuits themselves propel the Continental Debtors into bankruptcy;14  far from being the

_____

13. Some, but not all, of the Plaintiffs who were included in the proof of claim filed in the Continental Holdings case may have received five cents on the dollar. See Addendum to Supp. App. However, this distribution was on behalf of their "creditor" status with respect to Continental

Airlines Holdings, not in exchange for the release of their claims against non-debtors.

14. According to the Continental Debtors' disclosure statement describing their plan of reorganization, their bankruptcy was precipitated by a recession and changes in fuel costs and flight demand, leaving the Continental Debtors with "a fourth quarter 1990 operating loss of approximately $300 million, no access to capital markets and only $87 million in cash." Third Supp. App. B1844 – B1845. See also Third Supp. App. B2042 (describing other precipitating factors, such as heavy losses resulting from service difficulties incurred in the integration of affiliate operations).

20

tail wagging the dog, we find it difficult to conceive that Plaintiffs' lawsuits were anything more than a flea.

We also take issue with the District Court's unsupported conclusion that the Continental Debtors' obligation to indemnify its D&Os transforms the release and permanent injunction of Plaintiffs' claims against non-debtor D&O defendants into a "key element" of the Continental Debtors' reorganization.15 We have stated previously that federal courts disfavor indemnity for federal securities law violations, calling into question the enforceability of these obligations. See Eichenholtz v. Brennan, 52 F.3d 478, 484– 486 (3d Cir. 1995) (holding that the district court did not abuse its discretion in extinguishing indemnification claims running counter to policies underlying securities laws). See also Laventhol, Krekstein, Horwath & Horwath v. Horwitch, 637 F.2d 672, 676 (9th Cir. 1980) (upholding district court's dismissal of indemnity claim, which "would undermine the statutory purpose of assuring diligent performance of duty and deterring negligence"); Globus v. Law Research Serv. Inc., 418 F.2d 1276, 1288 (2d Cir. 1969) (agreeing with the lower court that "to tolerate indemnity under these circumstances would encourage flouting the policy of the common law and the securities

_____

15. The Continental Debtors elected to retain their contractual obligation, under bylaws and "assumed" employment contracts, see 11 U.S.C. S 365(a), to indemnify their officers and directors. The Continental

Debtors' by-laws specifically provide only for director and officer indemnification "to the fullest extent permitted by applicable statute." Joint Supp. App. B2; DEL. CODE. ANN. tit. 8 S 145. Delaware law permits indemnification of corporate directors and officers for liability if they acted "in good faith and in a manner which the person reasonably

believed to be in or not opposed to the best interests of the corporation."

DEL. CODE. ANN. tit. 8 S 145(a). The statutory obligation to reimburse for actual and reasonable defense costs arises if the director or officer was "successful on the merits or otherwise in defense" of an action, and advancement of expenses is not required. Id.S 145(c); see Advanced Mining Systems v. Fricke, 623 A.2d 82, 85 (Del. Ch. 1992) (absent by-law provisions establishing mandatory advancement, requiring that board consider corporation's interests before providing such advancement); Havens v. Attar, No. 15134, 1997 WL 55957 at *14 (Del. Ch. Jan. 30, 1997) (granting preliminary injunction to prevent board from advancing litigation expenses).

act"); Lucas v. Hackett Assoc., Inc., 18 F. Supp. 2d 531, 535-538 (E.D. Pa. 1998) (holding that party was not entitled to indemnity for federal securities law violations, including those "clothed as state law tort claims," but declining to enter an order barring a state court from proceeding on an indemnity claim premised solely on state law) (citing In re Sunrise Securities Litigation, 793 F. Supp. at 1306, 1321 (E.D. Pa. 1992)); Raychem Corp. v. Fed. Ins. Co., 853 F. Supp. 1170, 1176 (N.D. Cal. 1994) ("Federal courts have held that those held liable for violations of certain provisions of the federal securities laws, including the anti-fraud provisions of the 1934 Act, may not recover indemnification"); Greenwald v. American Medcare Corp., 666 F. Supp. 489, 493 (S.D.N.Y. 1987) (interpreting Delaware law, stating that "no party who has himself knowingly and wilfully violated the federal securities laws may obtain indemnity from another violator of those laws," but finding that party should have opportunity to show whether he was at fault).

We find no evidence in the record before us supporting the possibility or probability of D&O indemnification as a factual or legal matter. Even if the D&O defendants' obligations culminating from Plaintiffs' class actions were indemnifiable, the fact that the reorganized Continental Airlines might face an indemnity claim sometime in the future, in some unspecified amount, does not make the release and permanent injunction of Plaintiffs' claims "necessary" to ensure the success of the Continental Debtors' reorganization.

Similarly unsupported is the District Court's conclusion that the non-debtor release and permanent injunction were warranted because Plaintiffs' lawsuits ultimately might implicate the D&O liability insurance policy, which was property of the Continental Debtors' bankruptcy estate under 11 U.S.C. S 541(a). One cannot assume too quickly

that the proceeds of this policy are property of the estate when the non-debtor D&Os, not the Continental Debtors, are the direct beneficiaries of the policy. We previously have recognized, albeit in a different context, that the proceeds from a insurance policy should be evaluated separately from the debtor's interest in the policy itself. See McAteer,

985 F.2d at 117 (stating in a chapter 13 case that "[o]wnership of a life insurance policy, such as involved here, does not necessarily entail ownership of the proceeds of that policy"). Other courts of appeals have disagreed as to the circumstances under which the proceeds of a D&O policy can be considered property of the estate, 16 but the analysis has been fact-intensive in any event. Such an analysis never took place in the District Court or the Bankruptcy Court. Even assuming that the proceeds are property of the estate, this by itself does not justify a permanent injunction of Plaintiffs' actions against the insured non-debtor D&O defendants as necessary for the reorganization of the Continental Debtors.

We do not dispute that, some day in the future, the reorganized Continental Debtors may face litigation or experience some financial ramification based on liabilities of the D&Os as a result of the indemnity obligation or the D&O liability insurance policy. However, we cannot accept the District Court's conclusion that a purported "identity of interest" between the Continental Debtors and the non-debtor D&O defendants, forged by the indemnity obligation or the D&O liability insurance policy, established the necessity of releasing and permanently enjoining Plaintiffs' claims, nor does this identity of interest speak to the

_____

16. Compare In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1401 (5th Cir. 1987) (engaging in fact-specific analysis and finding that corporate debtor had no ownership interest in proceeds of D&O liability policy, which belonged to the D&Os) with Minoco Group of Companies, Ltd. v. First State Underwriters Agency (In re Minoco Group of Companies, Ltd.), 799 F.2d 517, 519 (9th Cir. 1986) (Noting that "the estate is worth more with the policy than without the policy," finding that D&O indemnity policy protected debtor against indemnity claims and was property of corporation's bankruptcy estate, thus insurer was stayed from terminating policy); Pintlar Corp. v. Fidelity and Casualty Co. of New

York, 124 F.3d 1310, 1313 (9th Cir. 1997) (distinguishing Minoco, concluding that court could not enjoin insurers' state court action for declaratory relief that would threaten only liability portion of D&O coverage). See also First Central Financial Corp. v. Lipson (In re First Central Financial Corp.), 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("While

a majority of courts consider a D&O policy estate property [citations omitted], there is an increasing view that a distinction should be drawn when considering treatment of proceeds under such policies").

fairness of the release and permanent injunction that we construe cases such as Manville, Drexel, or Robins to require.17 We conclude that granting permanent injunctions to protect non-debtor parties on the basis of theoretical identity of interest alone would turn bankruptcy principles on their head. Nothing in the Bankruptcy Code can be construed to establish such extraordinary protection for non-debtor parties.

In summary, we find, based on the record before us, that the Bankruptcy Court and District Court lacked a sufficient evidentiary and legal basis to authorize the release and permanent injunction of Plaintiffs' claims under any of the standards adopted by courts that have evaluated non-debtor releases and permanent injunctions. Under these circumstances, the release and permanent injunction amounted to nothing more than a lockstep discharge of non-debtor liability and fall squarely into the section 524(e) prohibition.

III.

For the foregoing reasons, we reverse the District Court's order. Based on our determination that the provision releasing and permanently enjoining Plaintiffs' claims is legally insupportable, we need not reach two remaining issues raised by Plaintiffs relating to Due Process and violation of Rule 23 of the Federal Rules of Civil Procedure.

_____

17. Cases cited by the Continental Debtors to support their argument that identity of interest justifies a permanent injunction, see Brief for Appellees at 30, actually involve the entry of a temporary injunction or extension of the automatic stay during the pendency of a bankruptcy case, which is quite a different matter. Although some courts may consider identity of interest when deciding whether to grant a permanent injunction, that factor is not considered in a vacuum; rather, it must be supported by actual record facts in evidence, and accompanied by other key considerations, e.g., whether the non-debtors made substantial contributions to the reorganization, whether the injunction is essential to

reorganization, whether affected parties overwhelmingly have agreed to accept the proposed treatment, and whether the plan pays all or substantially all of the affected parties' claims. See Master Mortgage Inv.

Fund, 168 B.R. at 935.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit